IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

REGINALD EARL OATES,                    :
                                        :
        Plaintiff,                      :   CIVIL ACTION NO. 11-00265-B
                                        :
VS.                                     :
                                        :
MICHAEL J. ASTRUE,                      :
Commissioner of Social Security,        :
                                        :
        Defendant.                      :


<u>ORDER</u>

Plaintiff Reginald Earl Oates ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, <u>et seq.</u>, and 1381, <u>et seq</u>.   On June 20, 2012, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19).   Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c).   (Doc. 21).   Oral argument was waived.  Upon careful consideration of the administrative record and the arguments and briefs of the parties, it is hereby **ORDERED** that the decision of

the Commissioner be **AFFIRMED**.

## I.   <u>Procedural History</u>

Plaintiff, on March 13, 2008, filed applications [1] for disability insurance benefits and supplemental security income, wherein he alleges that he has been disabled since January 10, 2004, due to "back and neck problems, trouble being around people, hear voices, mental." (Tr. 116-17, 157-164, 182, 192). Plaintiff's earnings records show that he has sufficient quarters of coverage to remain insured through March 31, 2008 (his "date last insured"), and that he was insured through that date. (<u>Id.</u> at 33-34, 116-17, 183). His applications were denied at the initial stage, and he filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (<u>Id.</u> at 118-19).

On August 11, 2009, ALJ Joseph T. Scruton ("the ALJ") held an administrative hearing, which was attended by Plaintiff, his representative, and vocational expert Gail Jarrell. (<u>Id.</u> at 30-76). On August 25, 2009, the ALJ issued an unfavorable decision

---

[1] Plaintiff has filed at least two previous applications for disability insurance benefits and supplemental security income. Plaintiff filed applications on September 30, 2003, which were denied on December 5, 2003. Additionally, Plaintiff filed applications on August 25, 2005, claiming an alleged disability beginning on April 4, 2003. Hearings were held on June 14, 2007, and September 6, 2007 before Administrative Law Judge R.G. Goosens. (Tr. 84). In an unfavorable decision dated November 26, 2007, ALJ Goosens found that Plaintiff was not disabled. (<u>Id.</u> at 79-103).

finding that Plaintiff is not disabled.[2]   (Id. at 15-29).
Plaintiff's request for review was denied by the Appeals Council
("AC") on April 8, 2011.   (Id. at 1-6, 11-12).   The ALJ's
decision became the final decision of the Commissioner in
accordance with 20 C.F.R. § 404.981.   (Id.).   The parties agree
that this case is now ripe for judicial review and is properly
before this Court pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

## II.   Issues on Appeal

A.   Whether the ALJ erred in adopting the
conclusions of a non-acceptable state agency medical
source to support his RFC assessment and by not
ordering a consultative exam?

B.   Whether the ALJ erred by failing to consider a prior
Agency decision, which found that Plaintiff cannot
perform his past relevant work?

C.   Whether the ALJ erred by presenting an incomplete
hypothetical to the VE, and in failing to find
Plaintiff disabled under the Grids?

## III.  Factual Background

Plaintiff was born on November 29, 1957, and was fifty-one
(51) years of age at the time of the administrative hearing.

---

[2]  In the instant decision, the ALJ noted that Plaintiff's
prior denials dated December 5, 2003, and November 26, 2007, are
"final, binding, and administratively res judicata."
Accordingly, he limited his decision to determining whether
Plaintiff was disabled from November 27, 2007, the day *after* the
last unfavorable decision was issued, and he amended
Plaintiff's onset of disability date. (Tr. 18).  Plaintiff does
not challenge this temporal limitation in the instant case.

(Tr. 149, 157, 161, 182).   Plaintiff testified that he has a twelfth grade education and has past relevant work as a custodian.  (Id. at 35, 55).  Plaintiff reported that he started experiencing back and neck pain after an automobile accident in 2003 and that he treats his back pain with cream and an electric back warmer.  (Id. at 35, 200).  According to Plaintiff, he is able to care for his personal needs, and is able to shop with his mother, but he can do little else. (Id. at 38-9, 201).

**IV.   Analysis**

    **A.   Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.   The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[3]  A court  may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.

_____

[3] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.

20 C.F.R. §§ 404.1520, 416.920.[4]

In the case sub judice, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. (Tr. 20). The ALJ concluded that while Plaintiff has the severe impairments of hypertension, lumbar strain, diabetes mellitus, degenerative joint disease of right acromioclavicular joint, mood disorder, adjustment disorder mixed with anxiety, depression, psychosis not otherwise

_____

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

specified, and substance abuse disorder, in partial remission,
they do not meet or medically equal the criteria for any of the
impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1,
Regulations No. 4.  (Id. at 20-21).  Relying on the record
evidence, the ALJ determined that Plaintiff retains the residual
functional capacity ("RFC") to:

> perform a range of light work as defined in
> 20 C.F.R. 404.1567(b) and 416.967(b). He can
> occasionally climb stairs, ramps, ladders,
> ropes, and scaffolds. He can occasionally
> stoop, crouch, kneel, and crawl. He can
> occasionally reach in all directions with
> his non-dominant, right arm. He is able to
> understand short, simple instructions. He is
> limited to jobs that require dealing with
> things rather than people. He is limited to
> occasional interpersonal contact.

(Id. at 23).

The ALJ also determined that Plaintiff can "lift and carry
twenty pounds occasionally and ten pounds frequently, stand
and/or walk for six hours in an eight hour workday, and sit for
six hours in an eight hour workday." (Id. at 26). The ALJ
utilized the services of a VE and determined that Plaintiff is
capable of performing his past relevant work (hereinafter "PRW")
as a cleaner/housekeeper, which is classified as light and
unskilled. (Id. at 27, 67). The ALJ found that, comparing
Plaintiff's RFC with the physical and mental demands of his PRW,
Plaintiff is able to perform his PRW as it is generally

performed.  (Id. at 27).   In the alternative, the ALJ further found that assuming *arguendo* that Plaintiff is not capable of performing his PRW, Plaintiff can perform other jobs that exist in significant numbers in the national economy, such as small products assembler and sorter. Thus, he concluded that Plaintiff is not disabled.  (Id. at 28-29).

The relevant evidence of record[5] reflects that Plaintiff was examined by Dr. Larry B. Thead on December 28, 2005, at the request of the Agency.  (Id. at 231-35).  Plaintiff reported that he injured his back in an automobile accident in 2003, and that he has suffered with neck and back pain ever since.  (Id.). On physical exam, the range of motion in Plaintiff's extremities was full, intact, and without tenderness or discomfort.  (Id. at 233).  Flexion and extension testing revealed full range of motion at the wrists and elbows.  (Id.).  Range of motion was full and intact without tenderness or limitation to dorsal and plantar flexion at the ankles bilaterally.  (Id.).  In addition, Plaintiff was able to rotate his body 65 degrees clockwise and counterclockwise, and heel/toe walk and squat, but he was not able to touch his toes.  (Id.).  Decreased mobility over

_____

[5] While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date, only that evidence which is relevant to the issues before the Court is included in the summary.

Plaintiff's neck and lumbar spine was noted, as was tenderness
of the paravertebral lumbar musculature. (Id.). Plaintiff's
upper and lower extremities tested 5/5 bilaterally, and
Plaintiff's gait was normal. Dr. Thead diagnosed decreased
range of motion in the lumbar spine with tenderness of the
paravertebral lumbar musculature. (Id.). Dr. Thead opined that
Plaintiff "would have no difficulty performing work related
physical activities such as sitting, handling, limited walking,
standing, and carrying." (Id. at 234).

The record reflects that Plaintiff was treated by various
physicians at the VA Gulf Coast Health Care System ("VA Clinic")
from at least March 2006 through April 2009. (Id. at 236-326,
353-472). During that time period, Plaintiff was treated
extensively for diabetes mellitus, psychosis, hallucinations,
drug and alcohol abuse, and back pain. (Id.). Plaintiff was
admitted for inpatient treatment at the VA from April 12 through
April 26, 2007 and from June 14 through June 18, 2007, due to
reports of homicidal thoughts and command hallucinations. (Id.
at 255-61, 313-14). Plaintiff was treated by Dr. Angelos
Vamvakas during both hospitalizations.

During Plaintiff's April admission, it was noted that he
had a goiter and was hyperthyroid. (Id. at 259). A thyroid
scan showed normal uptake and no imaging abnormalities. (Id.).

Plaintiff was encouraged to follow up with his personal doctor. (Id.). Plaintiff's right shoulder pain was explored with x-rays and a CT scan, but no fracture was observed. (Id.). Prior to discharge, Plaintiff reported that he continued to have auditory hallucinations but stated that he had no intention to hurt anyone. (Id.). Dr. Vamvakas diagnosed psychotic disorder NOS, rule out malingering, right shoulder pain, cocaine dependence, antisocial personality disorder, and hyperthyroidism, and assigned a GAF score of 35. (Id. at 259-260). During Plaintiff's second hospitalization, Dr. Vamvakas noted that Plaintiff's complaints were similar to those at his prior hospital admission, and his auditory hallucinations were not associated any objective signs. (Id. at 256-57). Dr. Vamvakas opined that mostly likely Plaintiff was malingering in order to have access to the IP unit. (Id. at 257). Dr. Vamvakas noted that he informed Plaintiff that he was already taking antipsychotic medication and that there was nothing more to do for him. (Id.). He diagnosed Plaintiff with cocaine and alcohol dependence, reported auditory hallucinations, rule out malingering, and antisocial personality disorder. (Id. at 257).

Plaintiff was seen by Dr. Doug Ewing at the VA in 2008. During a February 2008 visit, Dr. Ewing observed that Plaintiff appeared to be in emotional distress and that Plaintiff's

psychosis was likely cocaine induced. (Id. at 274-76). Dr. Ewing assigned a GAF score of 45. (Id. at 276). At Plaintiff's April 2008 visit, Dr. Ewing opined that Plaintiff's mood was not proportionally severe to account for psychotic hallucinations and thought that the hallucinations could be the result of fabrication or exaggeration for financial or legal secondary gain or a long history of cocaine abuse. (Id. at 395-98). Plaintiff's laboratory results taken on March 4, 2008, April 11, 2008 and December 10, 2008, were  negative for barbiturates, amphetamine, cocaine, cannabinoid, opiates, and benzodiazepine. (Id. at 379-80, 392-94, 403). Plaintiff was also treated at the VA Clinic in 2009.  While Plaintiff reported that he was still hearing voices, Dr. Ewing noted that other than Plaintiff's statements regarding the voices, no other evidence was presented. (Id. at 373-76).

Plaintiff was evaluated by Scott Long, a physician's assistant at the VA, on November 20, 2007.  (Id. at 285). Plaintiff reported left sided back pain with occasional pain extending down the left leg.  (Id.).  A straight leg raise test was negative, and the range of motion in Plaintiff's back was limited in all directions due to left sided pain.  (Id.). Plaintiff was diagnosed with low back strain, was prescribed Toradol, and directed to restrict from heavy lifting for one

week.  (Id.).  Radiological imaging of Plaintiff's lumbar spine
was taken that same day.  (Id. at 316).  Plaintiff's
intravertebral disc space, vertebral body height, and overall
vertebral alignment were maintained.  (Id.).  Sacralization of
L5 was noted.  (Id.).  No evidence of pars interarticularis
defect was noted, and his soft tissues were unremarkable.
(Id.).

At the request of the Agency, medical consultant Donald E.
Hinton, Ph.D. (hereinafter "Dr. Hinton") reviewed Plaintiff's
medical records, and on April 9, 2008, he completed a
Psychiatric Review Technique and Mental RFC Assessment.  (Id. at
327-343).  He diagnosed Plaintiff with Psychosis, NOS, antisocial
personality disorder, and alcohol and cocaine abuse.  (Id. at
329, 334-35).  Dr. Hinton opined that Plaintiff is moderately
limited in maintaining concentration, persistence, and pace, and
in maintaining social functioning, that he is mildly limited in
activities of daily living, and he has not suffered not episodes
of decompensation.  (Id. at 337).

In the Mental RFC Assessment (Id. at 341-343), Dr. Hinton
opined that Plaintiff is able to understand, remember and to
carry out short and simple instructions, and that he is able to
concentrate and attend for reasonable periods of time.  He
opined that Plaintiff should not have general public as part of

a usual job duty.  (Id. at 343).

Phillip W. Lambert, a single decision maker with the Agency, reviewed Plaintiff's file and completed a Physical RFC Assessment. (Id. at 345-52). He listed Plaintiff's diagnoses as diabetes and low back pain, and opined that Plaintiff can lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull for an unlimited amount of time.  (Id. at 345-46).  He further opined that Plaintiff is limited in that he can occasionally climb ladders/ropes/scaffolds, ramps/stairs, and stoop, and he can frequently balance, kneel, crouch, and crawl.  (Id. at 347).  He also found that Plaintiff has no manipulative, visual, environmental, or communicative limitations.  (Id. at 348-49).

Dr. Ewing completed a Mental RFC Questionnaire on July 29, 2009, wherein he opined that Plaintiff has marked restrictions of activities of daily living, an extreme degree of difficulty in maintaining social functioning, constant deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely and appropriate manner, and that Plaintiff would experience four or more episodes of decompensation in a work or work-like setting which cause the individual to withdraw from that situation or to experience

13

exacerbation of signs and symptoms for a period lasting at least two weeks.  (Id. at 473-74).

>   1.   Whether the ALJ erred in adopting the conclusions of a non-acceptable state agency medical source to support his RFC assessment and by not ordering a consultative exam?

In his brief, Plaintiff asserts that the ALJ erred in giving significant weight to the opinions provided by State Agency disability examiner, Phillip Lambert, in a physical RFC assessment because Mr. Lambert is not an acceptable medical source. Plaintiff further contends that the ALJ erred because he did not rely on any medical evidence in determining Plaintiff's RFC.

In response, the Commissioner asserts that the ALJ did not adopt the opinions contained in the assessment prepared by Mr. Lambert, and that in referencing the opinions of physicians employed by the State Disability Determination Services, the ALJ was actually referring to the opinion of State Agency psychologist, Dr. Hinton.  According to Defendant, it is clear that the ALJ did not rely on the opinions of Mr. Lambert because Mr. Lambert opined that Plaintiff could perform medium work whereas the ALJ placed Plaintiff's RFC range at the light level, and in any event, RFC determinations are within the province of the ALJ and are based on all relevant evidence and not just

medical evidence.

The relevant portion of the ALJ's opinion reads in
pertinent part:

> Finally, the conclusions reached by the
> physicians employed by the State Disability
> Determination Services also supported the
> finding of 'not disabled.' Although those
> physicians were non-examining, and therefore
> their opinions do not as a general matter
> deserve as much weight as those of examining
> or treating physicians, those opinions do
> deserve some weight, particularly in a case
> like this in which there exist a number of
> other reasons to reach similar conclusions
> (as explained throughout this decision).

(Tr. 27).

"Residual functional capacity, or RFC, is a medical
assessment of what the claimant can do in a work setting despite
any mental, physical or environmental limitations caused by the
claimant's impairments and related symptoms. 20 C.F.R. §
416.945(a)." Peeler v. Astrue, 400 Fed. Appx. 492, 494 n.2
(11th Cir. 2010). The assessment considers the claimant's
ability to lift weight, sit, stand, push, and pull, among other
tasks. 20 C.F.R. § 404-1545(b). The responsibility for
determining a plaintiff's RFC lies with the ALJ and is based on
all of the evidence of record. See Phillips v. Barnhart, 357
F.3d 1232, 1238 (11th Cir. 2004) (ALJ has duty to assess the
residual functional capacity on the basis of all the relevant

credible evidence of record); 20 C.F.R. §§ 404.1546, 416.946
(responsibility for determining a claimant's residual functional
capacity lies with the ALJ). See also Foxx v. Astrue, 2009 U.S.
Dist. LEXIS 80307, *17 (S.D. Ala. Sept. 3, 2009)("The RFC
assessment must be based on all of the relevant evidence in the
case such as: medical history, medical signs and laboratory
findings, the effects of treatment, reports of daily activities,
lay evidence, recorded observations, and medical source
statements."), citing  SSR 96-8p, 1996 SSR LEXIS 5; Harris v.
Astrue,  2008 U.S. Dist. LEXIS 27514, *13 (M.D. Fla. Sept. 7,
2008) ("[T]he law judge, as the factfinder, does not need an
opinion from a treating or examining doctor concerning a
claimant's functional limitation in order to make a finding
regarding a claimant's residual functional capacity.").

    Contrary to Plaintiff's contention, there is nothing in the
ALJ's opinion that suggests that he believed Mr. Lambert to be a
medical professional of any sort. In his physical RFC
assessment, Mr. Lambert determined that Plaintiff is capable of
medium [6] work consisting of lifting and/or carrying 50 pounds
occasionally and 25 pounds frequently, standing and/or walking

---

[6] "Medium work involves lifting no more than 50 pounds at a
time with frequent lifting or carrying of objects weighing up to
25 pounds. If someone can do medium work, we determine that he
or she can also do sedentary and light work." 20 C.F.R. §
404.1567(c).

and sitting about 6 hours in an 8-hour workday, pushing and/or pulling for an unlimited amount of time and that Plaintiff could occasionally climb ladders/ropes/scaffolds, ramps/stairs, and stoop, and frequently balance, kneel, crouch, and crawl. The ALJ however found that Plaintiff can perform light work consisting of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking and sitting for six hours in an eight hour workday and that Plaintiff can occasionally climb stairs, ramps, ladders, ropes, and scaffolds, occasionally stoop, crouch, kneel, and crawl, and occasionally reach in all directions with his non-dominant arm. The ALJ's RFC determination is notably more restrictive than that of Mr. Lambert, and this inconsistency belies any notion that the ALJ relied on the assessment completed by Mr. Lambert or that he gave it controlling or substantial weight.

While the undersigned recognizes that Mr. Lambert's physical RFC assessment is the only such assessment in the record, the RFC established by the ALJ is supported by substantial evidence.

For instance, Dr. Thead, who examined Plaintiff in December 2005, noted that Plaintiff's range of motion was full and intact without tenderness or limitation to dorsal and plantar flexion at the ankles bilaterally, that Plaintiff's gait was normal,

that Plaintiff could not touch his toes but could squat, and that Plaintiff had decreased mobility over lumbar spine and tenderness of paravertebral lumbar musculature. (Id. at 231-35). Dr. Thead opined that Plaintiff would have no difficulty performing work related physical activities. (Id. at 234). In addition, the physicians at the VA Clinic likewise never opined that Plaintiff was incapable of work activity. Indeed, the doctors at the VA Clinic opined that some of Plaintiff's mental impairments were exaggerated or fabricated and that Plaintiff could be malingering. Moreover, when Plaintiff was examined on November 20, 2007, by Scott Long, a physician's assistant at the VA, he was assessed with low back strain, prescribed Toradol and directed to refrain from heavy lifting for one week. (Id. at 285). Moreover, the results of the radiological imaging of Plaintiff's lumbar spine on the same date were essentially normal. (Id. at 316). Accordingly, the undersigned concludes that substantial evidence supports the ALJ's RFC assessment.[7]

---

[7] To the extent Plaintiff argues the ALJ should have ordered a consultative examination, his contention is without merit. The ALJ is not required to order a consultative exam simply because one is requested. A consultative examination is appropriate when the evidence as a whole, both medical and nonmedical, is not sufficient to allow the ALJ to make a decision on the claim. See Doughty v. Apfel, 245 F.3d 1274, 1280-81 (11th Cir. 2001); see also 20 C.F.R. §§ 404.1519(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or

2.  Whether the ALJ erred by failing to consider a prior Agency decision, which found that Plaintiff cannot perform his past relevant work?

Plaintiff alleges, in a footnote, that the ALJ erred by failing to consider a prior decision by the Agency that he is unable to perform his PRW and cites 20 C.F.R. § 404.953 in support.  Defendant suggests that consideration of the prior final decision denying Plaintiff benefits would amount to reopening the prior denial, and that the Court does not have jurisdiction to review the Commissioner's prior denial.

Here, the ALJ observed that the denials of Plaintiff's applications for benefits dated December 2, 2003, and November 26, 2007, were final, binding, and administratively res judicata. The ALJ further noted that "[a]ny reference in this decision to evidence *prior* to November 26, 2007 has been made for historical and continuity purposes. There has been no implicit or explicit finding of reopening of the prior denials." (Tr. 18).

---

ambiguity if one exists.  We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."), 404.1519a(b) ("A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim."); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1985). Here, the ALJ had no reason to order a consultative examination because sufficient evidence was present in the record for the ALJ to make a disability determination.

Generally, "[a] final decision by the [Commissioner] will be deemed reopened if it is reconsidered on the merits to any extent and at any administrative level." Cherry v. Heckler, 760 F.2d 1186, 1189 (11th Cir. 1985) (internal quotation marks omitted, emphasis added). Inasmuch as the first adjudication has been given res judicata effect, typically, the medical evidence from the previous application is not reevaluated. Robbins v. Sec'y of Health and Human Servs., 895 F.2d 1223, 1224 (8th Cir. 1990). An exception is made where the prior medical evidence "serves as a background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding." Id. Thus, regardless of the preclusive effect of the prior proceeding, in this case, the ALJ was permitted to use information gleaned from the prior decision "for historical and continuity purposes" without reopening the previous action.

That said, the question before the Court is whether the findings in the prior final administrative decision, that Plaintiff cannot return to his PRW, was binding on the ALJ deciding Plaintiff's instant applications. In McKinzie v. Comm'r of Soc. Sec., 362 Fed. Appx. 71, 73 (11th Cir. Jan. 21, 2010), a panel of the Eleventh Circuit addressed the issue of whether administrative res judicata precluded an ALJ from rejecting a prior ALJ's finding that the claimant could not use

her arms or hands repetitively. The Court observed that
"[a]dministrative res judicata applies when the agency has made
a 'previous determination or decision ... about [a claimant's]
rights on the same facts and on the same issue or issues, and
this previous determination or decision [had] become final by
either administrative or judicial action.' 20 C.F.R. §
404.957(c)(1); see also Cash v. Barnhart, 327 F.3d 1252, 1255
(11th Cir. 2003)." McKinzie, 362 Fed. Appx. at 73. The Court
in McKinzie concluded that because the plaintiff's current
application involved a different time interval, the ALJ did not
err in declining to give preclusive effect to findings, made by
another ALJ in a prior administrative determination, that the
claimant could not use her arms or hands repetitively. See also
Luckey v. Astrue, 331 Fed. Appx. 634, 638 (11th Cir.
2009)("Because the factual time period for [the claimant]'s
current application is different from her previous application,
administrative res judicata does not apply."); Crawford v.
Astrue, 2010 U.S. Dist. LEXIS 14118, *20-25 (S.D. Ala. Jan. 29,
2010) (finding that a prior unfavorable decision which provided
that the plaintiff's RFC include a sit/stand option was not
binding in subsequent proceedings involving an unadjudicated
time period).

        In the case at hand, the finding by the ALJ in the prior

final administrative decision, dated November 26, 2007, that
Plaintiff cannot perform his past relevant work as a
cleaner/housekeeper, was not binding on the ALJ who issued the
decision in the instant case because the prior case covered the
period from December 6, 2003, through the date of that decision,
November 26, 2007, whereas the focus in this decision was on the
period November 27, 2007, and forward. Thus, the ALJ did not err
in declining to give preclusive effect to the prior finding that
Plaintiff was not able to return to his PRW.

      3.    <u>Whether the ALJ erred by presenting an incomplete
hypothetical to the VE, and in finding that
Plaintiff can return to his PRW?</u>

Plaintiff contends that the ALJ failed to pose a complete
hypothetical to the VE because in the first hypothetical
propounded to the VE, the ALJ did not include the restriction
that Plaintiff can occasionally reach in all directions with his
non-dominant right hand. Plaintiff further contends that the ALJ
erred in finding that Plaintiff can perform his past work as
cleaner/housekeeper because the Dictionary of Occupational
Titles ("DOT") provides that reaching and handling are performed
frequently, or 1/3 to 2/3 of the time, in that occupation, but
the ALJ specifically found that he can only occasionally reach
in all directions with his non-dominant right hand. Plaintiff
also suggests that he should be found disabled under Rule 201.12

22

of the Grids.  According to Plaintiff, the VE, in response to a hypothetical that included Plaintiff's reaching restriction, limited Plaintiff to sedentary work, and Rule 201.12 of the Grids directs a finding of disabled for an individual who is his same age, has the same education and work history, but no transferrable skills and who can only perform sedentary work.

The Commissioner argues that the ("DOT") does not differentiate between right and left extremity reaching and that Plaintiff's limitation to no more than occasional reaching in all directions with his non-dominant right arm does not mean that Plaintiff could not engage in frequent reaching with his dominant left arm and thus perform his past work as cleaner/housekeeper. In other words, the Commissioner contends that bilateral hand use is not needed to perform the job of cleaner/housekeeper, and that Plaintiff may be able to utilize his dominant left hand to perform the frequent reaching and handling as required by the cleaner/housekeeper position.

The law is clear that "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1270 (11th Cir. 2007)(quotation omitted). The ALJ is not required to include findings in the hypothetical that he

properly finds are unsupported. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).

The record reflects that the ALJ presented three hypotheticals to the VE. Plaintiff is correct that in the first hypothetical posed to the VE, the ALJ did not include the restriction that limits Plaintiff to no more than occasional reaching in all directions with his non-dominant right arm. Plus, the first hypothetical was based on the assessment by Phillip Lambert, the single decision maker. As noted supra, this assessment was implicitly rejected by the ALJ because in it, Mr. Lambert concluded that Plaintiff could perform work at the medium level, whereas the ALJ determined that Plaintiff could perform a range of light work. Thus, the VE's testimony in regards to this hypothetical is of no moment because it is clear that the ALJ did not rely upon it in reaching his decision.

In the second hypothetical presented to the VE, the ALJ asked the VE to assume an individual of similar age, education and prior work history as Plaintiff, and to assume that the individual could lift 20 pounds occasionally and ten pounds frequently; could sit, stand, or walk six hours out of an eight hour work day; could occasionally climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, or crawl; and is capable of understanding, remembering, carrying out short simple

instructions, and working in jobs dealing with things rather than people but with only occasional conversations and interpersonal interaction.  While the VE testified that such an individual could return to his past relevant work, this second hypothetical did not include Plaintiff's restriction on reaching with his non-dominant right hand; thus, to the extent that the ALJ relied upon the VE's response to this hypothetical to find that Plaintiff could return to his PRW, the ALJ erred because the VE's response was based on an incomplete hypothetical.  The undersigned finds however that this error was not fatal because the ALJ did not end his analysis at step four.  He continued to step five of the analysis, and determined that assuming arguendo that Plaintiff cannot return to his PRW, other jobs exist in substantial numbers in the national economy that Plaintiff can perform.

In the third hypothetical presented to the VE, the ALJ modified the second hypothetical to include a restriction to sedentary work and to include the restriction that Plaintiff can only occasionally reach in any direction with his right non-dominant arm.  In response to the third hypothetical, the VE testified that the individual could not return to the cleaner/housekeeper position the DOT classifies as light and unskilled (§ 323.687-014).  The VE further testified that the

individual could perform other jobs such as small products assembler, sorter, surveillance systems monitor, and tube operator. (Id. at 68-72).

As noted supra, Plaintiff argues that because the jobs identified were sedentary, Rule 201.12 of the Grids directs a finding of disabled for an individual of who is his same age, has the same education and work history, but no transferrable skills and who can only perform sedentary work. Plaintiff's assertion is misplaced. The ALJ expressly observed:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.13. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

(Id. at 28).

The Eleventh Circuit has repeatedly recognized that "[e]xclusive reliance on the grids is not appropriate either when [1] [the] claimant is unable to perform a full range of work at a given residual functional level or [2] when a claimant has non-exertional impairments [i.e., impairments not related to

26

strength] that significantly limit basic work skills." <u>Phillips</u>
<u>v. Barnhart</u>, 357 F. 3d 1232, 1242 (llth Cir. 2004) (emphasis in
original). In such cases, the claimant's occupational base (the
number of jobs he is able to perform based on his RFC, age,
education and work experience) may be affected. <u>See</u> S.S.R. 83-
12, 1983 SSR LEXIS 32 (explaining that when a claimant's
exertional limitations do not coincide with a particular
exertional level in the grids, the adjudicator may need to
consult a vocational expert to determine the extent of any
erosion in the occupational base.). Accordingly, in cases where
the occupational base may be affected, the ALJ is required to
make an individualized assessment and consult a VE to determine
whether there are jobs in the economy that the claimant can
perform. <u>See</u> <u>Phillips</u>, 357 F. 3d at 1242-43.

In this case, the ALJ determined that Plaintiff could
perform a range of light work, and that non-exertional
limitations impeded his ability to perform a full range of light
work. Having determined that Plaintiff's light occupational
base was impeded, the ALJ properly relied on the VE, as opposed
to the Grids, to determine the extent to which the limitations
eroded Plaintiff's job base. The VE in turn identified a number
of jobs, some of which were classified by the DOT as "light"
which were actually performed at the sedentary level, which an

individual with Plaintiff's age, education, work experience, and residual functional capacity could perform.  Accordingly, the ALJ did not err in finding that other jobs exist in significant numbers in the national economy that the claimant can perform.

## V.    Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income, be **AFFIRMED.**

DONE this **21st** day of **September, 2012.**

                              /s/ SONJA F. BIVINS
                    **UNITED STATES MAGISTRATE JUDGE**